Feliciano Acevedo, Juez Ponente
*740 TEXTO COMPLETO DE LA SENTENCIA
I
El apelante, Manuel J. Pizarro Rodríguez, solicita la revocación de la sentencia sumaria que fuera emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 5 de junio de 1997. Mediante dicho dictamen el foro sentenciador declaró con lugar la demanda en cobro de dinero por incumplimiento de contrato que fuera presentada contra Pizarro por Oriental Bank & Trust (Oriental) y, asimismo, deniega la reconvención que fuera a su vez sometida por el demandado contra Oriental.
Examinadas las alegaciones de las partes, los documentos que obran en el expediente y el derecho aplicable, resolvemos confirmar el dictamen en apelación.
II
El 15 de agosto de 1994, Pizarro suscribió un contrato de arrendamiento de un vehículo de motor con Oriental. A tenor con el mismo, Pizarro se comprometía a pagarle a Oriental un canon de arrendamiento mensual de $562.00, por el término de sesenta (60) meses. No habiendo cumplido éste en determinado momento con dichos pagos, Oriental le reclamó al respecto. Pizarro persistió en su omisión, por lo que el 10 de octubre de 1996 Oriental le demandó en cobro de dinero por incumplimiento de contrato y reposesión.
Oriental alegó que Pizarro no había cumplido con los términos del contrato, no obstante los avisos y gestiones de cobro efectuados, y le reclamó así el pago de la suma de $18,472.00 por razón del principal y de $5,541.60, por razón de honorarios de abogado, además de costas, gastos legales e intereses, conforme se pactaran en el referido contrato. Oriental declaró vencida en su totalidad la deuda contraída por Pizarro.
Expirado en exceso el término dispuesto por ley para que Pizarro hiciera su alegación responsiva, el 18 de febrero de 1997 éste contestó la demanda. El demandado negó las imputaciones de Oriental y argumentó, además, que el contrato en controversia era nulo, por ser uno de adhesión y haber sido redactado solamente en inglés, idioma que según él desconocía. Además, Pizarro presentó conjuntamente una reconvención contra Oriental. En la misma reprodujo sus planteamientos en cuanto a la invalidez del contrato, y alegó que el vehículo en controversia le había sido confiscado por el Gobierno de Puerto Rico y que Oriental, en violación a su obligación contractual como dueño del mismo, no había impugnado dicha confiscación. Adujo que ello le había causado daños ascendentes a $100,000.
El 20 de febrero de 1997, Oriental solicitó que se declarara sentencia sumaria a su favor. Adujo que la deuda era líquida, vencida y exigible; y que no existía controversia de hechos que impidiera la utilización de la vía sumaria. Acompañó su escrito con copia del contrato de arrendamiento, una declaración jurada del señor Angel Buonomo, Ejecutivo de Oriental, indicando el monto de la deuda de Pizarro con Oriental, y copia de las cartas y gestiones extrajudiciales de cobro que se hicieron contra Pizarro. En cuanto a la reconvención, cuatro días después, el 24 de febrero, contestó la misma.
Un mes después, Oriental se opuso a la moción de sentencia sumaria. Argumentó que existían cuestiones de hecho y de derecho que impedían que se dictara la misma. Enumeró, entre estas últimas, el hecho de que el contrato en controversia fuese uno inválido; que, en la alternativa, no estaba él obligado a cumplir el convenio, puesto que Oriental también había faltado a sus obligaciones como *741 entidad propietaria al no haber realizado gestiones para recuperar el vehículo confiscado; y puesto que igualmente le albergaba la protección de la doctrina del "Rebuc Sic Stantibus". Pizarro no anejó documento alguno que controvirtiera los hechos que, según Oriental, no estaban en controversia.
El 15 de mayo de 1997, el Tribunal dictó sentencia en rebeldía contra Pizarro, aduciendo que éste no había contestado nunca la demanda. Al así hacerlo, le condenó al pago de $18,472.00 de principal, más intereses al tipo legal prevaleciente de 9.25% desde la presentación de la demanda hasta el pago legal de la deuda, además de las costas, gastos y $5,541.60 por concepto de honorarios de abogado.
Así las cosas, el 20 de mayo, Pizarro sometió un escrito titulado "Moción Informativa y de Relevo de Sentencia". Poco después, el 5 de junio, el Tribunal de Primera Instancia reabrió el caso y dictó sentencia sumaria a favor de Oriental. Según expuso, dicha parte había evidenciado todos los elementos de su causa de acción, mientras que Pizarro había comparecido realizando meras argumentaciones, sin presentar contradeclaraciones juradas, ni mucho menos documentos que motivaran el surgimiento de una controversia "bonafide" de hechos. El foro sentenciador obvió discutir los planteamientos de derecho ofrecidos por Pizarro.
Mediante dicho dictamen, el Tribunal condenó nuevamente a Pizarro al pago de los $18,472.00 además de costas, gastos y a los $5,541.60 por concepto de honorarios y declaró al mismo tiempo sin lugar la reconvención.
Pizarro solicitó reconsideración de dicha sentencia sumaria. Insistió en que su oposición a la sentencia sumaria estaba basada en cuestiones de derecho, las cuales no habían sido resueltas por el tribunal sentenciador, según correspondía. Dicha moción no fue acogida.
Así las cosas, Pizarro presentó apelación oportunamente. Argumentó que el tribunal estaba impedido de dictar sentencia sumaria en su contra puesto que existían controversias de hechos y de derecho y que con ello le había privado del debido proceso de ley. Asimismo reprodujo sus alegaciones relacionadas a la invalidez del contrato, al incumplimiento de Oriental al no ayudarle a recuperar el vehículo y a la aplicación de la doctrina de revisibilidad contractual del "Rebus Sic Stantibus".
Habiendo sido presentado el alegato de Oriental, nos encontramos en posición de resolver.
III
La Regla 36.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III (R. 36.3), autoriza que se dicte sentencia sumaria cuando se demostrare de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas en unión a las declaraciones juradas, si las hubiera, que no existe controversia real sustancial en cuanto a ningún hecho material.
El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando surge de documentos no controvertidos que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. PFZ Properties Inc. v. General Accident Insurance Company, 94 J.T.S. 116, pág. 111.
Se exige que la parte promovente en una moción de sentencia sumaria demuestre que no hay controversia real sustancial en cuanto a ningún hecho material y que procede dictarse sentencia a su favor como cuestión de ley. La ley opositoria viene obligada entonces a poner en controversia los hechos presentados por el promovente. Pilot Life Insurance Company v. Crespo Martínez, 94 J.T.S. 104, pág. 21. Tiene dicha parte el deber afirmativo de presentar prueba que sostenga la existencia de hechos controvertidos. Tello Rivera v. Eastern Airlines, supra.
En el presente caso, Pizarro no controvirtió, conforme lo exigen la Regla 36.1 de Procedimiento Civil y la jurisprudencia aplicable a ésta, la solicitud de sentencia sumaria de Oriental. Surge de los hechos que Oriental sometió toda una serie de documentos que acreditaban la existencia de la relación contractual entre dicha institución bancaria y Pizarro, y asimismo el incumplimiento de este último en los pagos del arrendamiento del vehículo. En el deseo de que se celebrara un juicio en su fondo y que se descartara así la utilización de la vía sumaria en la resolución de la presente disputa, le *742 correspondía a este ultimo la presentación, algo que no hizo, de alguna evidencia documental, ya fuera de cheques cancelados o recibos debidamente firmados, a los fines de derrotar las alegaciones y la prueba sometida por Oriental.
En ausencia de una genuina controversia de hechos entre las partes, lo cierto es que nada impedía que el tribunal sentenciador resolviera mediante el mecanismo de sentencia sumaria la disputa entre las partes. Concluimos que no erró el Tribunal de Primera Instancia en dicho sentido. No obstante, surge de la sentencia apelada que dicho foro obvió discutir, erróneamente, las defensas sustantivas levantadas en aquél entonces por Pizarra y replanteadas hoy ante nos, en cuanto a que no estaba él obligado a cumplir.
IV
En primer lugar, Pizarra aduce que no estaba obligado a cumplir puesto que el contrato en controversia era nulo, por ser uno de adhesión redactado exclusivamente en inglés, idioma que alegadamente desconocía. No tiene mérito alguno esta contención.
El contrato de adhesión es aquél en que el contenido, es decir las condiciones de la reglamentación, son obra de una sola de las partes, de tal modo que el otro contrayente no presta colaboración alguna a la formación de contenido contractual, quedando así sustituida la ordinaria determinación bilateral del contenido del vínculo por un simple acto de aceptación o adhesión al esquema predeterminado unilateralmente. Es también aquél en que la parte contrayente económicamente más fuerte, realiza la imposición de determinadas cláusulas o del completo esquema del contrato, en sentido ventajoso para él y en detrimento del otro contrayente, el cual siendo económicamente más débil no tiene libertad de escoger. Este se ve obligado a aceptar aquellas cláusulas o aquel esquema, o a renunciar a la celebración del contrato. Castán, Derecho Civil Español, pág. 332.
De igual manera, en Estados Unidos se le conoce como "adhesion contract" y se le define como aquél en que la intervención de una las partes consiste en su mera conformidad, involuntaria y muchas veces sin conocimiento real de los términos de un documento redactado unilateralmente y forzado a aceptarlo generalmente por una empresa poderosa. Ehrenzweig, "Adhesion Contracts", 53 Colum. L. Rev. 1072, 1075 (1953).
Como ejemplos frecuentes de contratos de adhesión tenemos los de seguros, transportes, suministros de agua, gas, electricidad, y contratos bancarios. Zequeira v. C.R.U.V., 83 D.P.R. 878, 882 (1961).
En el ánimo de evitar las inequidades e injusticias a las que puede prestarse un contrato de adhesión, se ha sostenido que en los mismos el juez tiene un poder excepcional de interpretación que le autoriza para no aplicar las cláusulas del contrato más que en consideración de la situación particular de las partes, e incluso un poder de revisión que le autorizaría a modificar el contrato en la parte que apareciera como injusta. Castán, id.
En relación a este tema en particular nuestra jurisprudencia ha resuelto que los contratos de adhesión no siempre deben ser interpretados liberalmente en favor de la parte más débil; tampoco están viciados de nulidad sólo por su carácter de adhesión. Sólo cuando el contrato de adhesión contiene cláusulas oscuras o ambiguas se activa la norma de interpretación del Artículo 1240 del Código Civil, que ordena resolver la ambigüedad en contra de la parte que redactó el contrato. En ausencia de tal ambigüedad, el contrato debe ser interpretado según sus términos. Arthur Young & Co. v. Vega III, 94 J.T.S. 75, Vol. XVII, pág. 11973.
En el caso de autos, si bien suscribió Pizarra un contrato de adhesión, cuyo contenido fue suscrito a voluntad de Oriental, como entidad propietaria y arrendadora del vehículo, lo cierto es que no se deriva del mismo cláusula o condición alguna que podamos considerar oscura o ambigua, sujeta a que sea interpretada a su favor, o a que, en el peor de los casos, se decrete su nulidad.
Aunque redactado solamente en el idioma inglés, condición que no está prohibida por norma o doctrina jurídica alguna, lo cierto es que sus estipulaciones son claras y entendibles. Ciertamente resulta absurdo que pretendiera éste alegar, por vez primera, y una vez se le reclamó el pago de los cánones adeudados y atrasados, que desconocía lo que había contratado por no entender el idioma *743 inglés. Particularmente si tomamos en cuenta que Pizarro cumplió inicial y cabalmente con sus pagos y que hasta entonces no había representado para él ningún problema entender a lo que se había comprometido.
y
En segundo lugar, Pizarro aduce que no estaba obligado a cumplir con Oriental, como entidad propietaria y acreedora, puesto que esta última faltó al mismo tiempo a sus obligaciones, al no haber participado ni haberle ayudado en sus gestiones para recuperar el vehículo una vez fue confiscado. Su alegación resulta también infundada.
Lo que surge de los documentos anejados al apéndice de la presente apelación es que el 18 de abril de 1996 el Departamento de Justicia del Estado Libre Asociado, a través de la Junta de Confiscación, le notificó a Pizarro la ocupación y confiscación, efectiva desde el día 6 de ese mismo mes y año, del vehículo que le fuera arrendado y la oportunidad de impugnar dicha confiscación. Igualmente surge de la demanda que radicara Pizarro contra el Estado Libre Asociado de Puerto Rico que éste no incluyó a Oriental como parte en la misma y que no le notificó copia de ésta. Según él mismo juró, él era el dueño del vehículo confiscado, aunque el mismo aparecía registrado a nombre de Oriental.
A tenor con lo anterior, es claro que la alegación de que Oriental incumplió con su obligación de impugnar la confiscación es una infundada y extraña a cualquier prueba que el propio Pizarro ha incluido como parte de su apelación.
VI
En cuanto a que le cobijaba la doctrina del "Rebus Sic Stantibus", tampoco tiene razón en este punto.
La cláusula "Rebus Sic Stantibus" es la fórmula de mayor aceptación entre las variadas teorías sobre la revisión de contratos por alteración de las circunstancias. Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 854 (1979).
La misma representa un contrapeso a la rigidez y al absolutismo expuesto en la prédica de sostener en todo momento y circunstancia, la voluntad contractual de las partes simbolizada en la máxima "pacta sunt servanda" recogida en el Artículo 1044 del Código Civil. Id., pág. 855. Su aplicación se justifica sobre todo en momentos de crisis económica o cuando se trata de contratos de ejecución sucesiva y larga dimensión, donde el cambio de circunstancias, ajeno a la actuación y voluntad de las partes puede hacer excesivamente onerosa para una de las partes la ejecución de lo convenido o puede convertir el contrato en objetivamente injusto. Casera Foods, Inc. v. E.L.A citando a Castán, Derecho Civil Español, Común y Floral, Tomo 3, pág. 544 (1974).
Para que la revisión del contrato sea admisible, es preciso que medien circunstancias muy especiales y extraordinarias. Entre éstas deben figurar el carácter imprevisible del acontecimiento que haya surgido; que la ejecución del contrato resulte extremadamente difícil u onerosa, de tal modo que constituya para el deudor una lesión que no guarde proporción con la ventaja prevista para él en el contrato; y que el contrato no tenga un carácter aleatorio o de pura especulación con el que las partes quisieron prever en cierto modo la posibilidad del acontecimiento. Id., págs. 855 y 856.
En el caso de autos, aun si consideráramos la confiscación del vehículo arrendado como un cambio imprevisto y totalmente ajeno a la voluntad o actuación de Pizarro, lo cierto es que no podemos decir que fue dicho evento el que hizo de la obligación de Pizarro de hacer sus pagos, una demasiado onerosa e imposible de cumplir, particularmente cuando ha quedado demostrado que nada hizo el apelante para informarle a Oriental sobre la pérdida del vehículo. Cabe también destacar, conforme a la prueba desfilada, que el incumplimiento de Pizarro en los pagos se inició desde varios meses antes de producirse el evento de la confiscación. (Véase al respecto notificación de cobro emitida por Oriental el 23 de mayo de 1996, pág. 27 del apéndice de la apelación.)
Por los fundamentos expuestos, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
*744 Aida Ileana Oquendo Graulau
Secretaria General